**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| THE CHILDREN'S HOSPITAL CORPORATION D/B/A BOSTON CHILDREN'S HOSPITAL,<br><br>                    Plaintiff,<br><br>     v.<br><br>ISIN CAKIR,<br><br>                    Defendant. | )<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. Plaintiff The Children's Hospital Corporation d/b/a Boston Children's Hospital ("Children's Hospital," the "Hospital," or "BCH") is the sole owner of all the images on the laptop computer that Defendant Isin Cakir ("Cakir") used in the course of his employment by the Hospital (the "Laptop"). Those images include all files, deleted files, hard drives, data, and metadata stored or located on the Laptop, as well as an exact forensic copy of the Laptop, including all active and residual data and unallocated space on the Laptop which was compressed and encrypted to ensure authentication and protect chain of custody (together, the "Laptop Data"). The Laptop Data belongs to Children's Hospital pursuant to: 1) the Participation Agreement for Persons Using the Funds or Facilities of Children's Hospital Boston (the "Participation Agreement"), which Defendant Cakir signed on October 6, 2010; and 2) Children's Hospital's Policy on Acceptable Use of Computer and Network Resources (the "Acceptable Use Policy").

2. When his employment with the Hospital ended, Defendant Cakir was required to return the Laptop to the Hospital, with all the Laptop Data intact.

3. Defendant Cakir delivered the Laptop to a third party computer forensics company, TechFusion Corporation ("TechFusion"), and gave TechFusion instructions to image the Laptop, but not to release the Laptop Data to Plaintiff Children's Hospital, or to anyone else.

4. Plaintiff Children's Hospital reminded Defendant Cakir on several occasions that the Laptop Data is the sole property of Plaintiff Children's Hospital, and that TechFusion must be instructed to release the Laptop Data to BCH. After months of delay, Defendant Cakir provided the Laptop to the Hospital in November 2014. However, the Laptop had been adulterated, and the Laptop Data had been largely removed.

5. The Laptop Data is extremely valuable, constituting work that Defendant Cakir did on various experimental drugs and other projects that Defendant Cakir worked on in one of BCH's laboratories, with a market value of well in excess of seventy-five thousand dollars. In addition, BCH believes and therefore alleges that the Laptop Data includes plans by Defendant Cakir to steal the Laptop Data for sale to or use by third parties unknown—which explains why he has steadfastly refused to provide the Laptop Data to the Hospital even after the Hospital offered to appoint an independent third party to remove anything of a personal nature.

6. Defendant Cakir's conversion of the Laptop Data has caused, and continues to cause, the Hospital to suffer injury, including damages from the loss of this valuable data. Children's Hospital thus seeks an Order directing Plaintiff Cakir to deliver the Laptop Data to the Hospital, either directly or by so instructing TechFusion, immediately.

## PARTIES

7. Plaintiff Children's Hospital is a leading center of pediatric clinical care and research and serves as the primary pediatric teaching hospital of the Harvard Medical School ("HMS"). Children's Hospital is a not-for-profit Massachusetts corporation.

8. Defendant Cakir is a post-doctoral fellow who was employed by Children's Hospital from October 2010 until April 30, 2015.

## JURISDICTION AND VENUE

9. Plaintiff Children's Hospital is a not-for-profit Massachusetts corporation that operates a 395-bed acute care hospital in the Longwood Medical Area located in Boston, Massachusetts.

10. Defendant Cakir currently resides in Nashville, Tennessee.

11. The Laptop Data is critical to clinical research related to the development and future commercialization of the Hospital's intellectual property. As a result, the amount in controversy far exceeds the sum of seventy-five thousand dollars.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

13. This Court has personal jurisdiction over Defendant Cakir pursuant to Massachusetts' long-arm statute, MASS. GEN. LAWS ch. 223A, § 3, because the tortious conduct at issue occurred in Massachusetts. Defendant Cakir instructed TechFusion, a Massachusetts corporation with its principal office in Cambridge, Massachusetts, to image the Laptop in Massachusetts, and the Laptop Data is currently at TechFusion's office in Cambridge.

14. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Massachusetts and the property that is the subject of the action is situated in Massachusetts.

## FACTUAL ALLEGATIONS

*Relevant Policies and Agreements*

15. As a post-doctoral fellow at Children's Hospital, Defendant Cakir was required to and did in fact sign the Hospital's Participation Agreement, on October 6, 2010. The Participation Agreement provides in relevant part as follows:

    > I understand that during the pursuit of activities within the scope of my employment by Children's Hospital Boston ("Hospital"), or during the performance of sponsored research made available to me by the Hospital, or during my use of funds, resources, or facilities owned or administered by the Hospital, I may (individually or jointly with others) … develop tangible or intangible research results and intellectual property (including, but not limited to, research notebooks, data, data bases, photographs, original drawings and diagrams, computer programs…). In consideration of my employment, or my opportunity to perform sponsored research, or my use of Hospital funds, resources, or facilities, I agree: (1) that all such research results, Intellectual Property…will be owned by the Hospital; … (5) to refrain from removing research materials, copyrightable materials, and other intellectual property from the Hospital premises, or transferring such to other parties…

16. In addition to the Participation Agreement, the Hospital has in place an Acceptable Use Policy that applies to anyone who uses the Hospital's computer resources and related services or accesses information stored there ("User"). The Acceptable Use Policy applied to Defendant Cakir as a defined "User," and broadly covers any hardware and software systems that store, communicate, or can access the Hospital's electronic information ("Hospital Computer and Network Resource").

17. The Acceptable Use Policy provides that all electronic information stored on or transmitted over the Hospital's Computer and Network Resources is the Hospital's sole and exclusive property "even when stored on non-[Children's Hospital] equipment and media (such as your personal laptop…)." Additionally, the Acceptable Use Policy specifies that a User's "rights to privacy do not extend to [a User's] use of [the

Hospital's] Computer and Network Resources, including email and the Internet or to any information stored or transmitted over the Computer and Network Resources." The Acceptable Use Policy also provides that the Hospital "has the right to monitor [a User's] access to and use of its Computer Resources, including the content of [a User's] computer files and email accounts."

18. As a defined "User" covered by the Hospital's Acceptable Use Policy, Defendant Cakir was at all relevant times on notice that non-compliance with the Acceptable Use Policy could subject him to severe disciplinary action, including termination and "substantial civil and criminal penalties under the law."

*Laptop Data*

19. Pursuant to the Participation Agreement and Acceptable Use Policy, the Laptop Data constitutes the sole property of Plaintiff Children's Hospital.

20. In or around July or August 2014, Defendant Cakir directed TechFusion to make a forensic image of the Laptop. TechFusion then returned the Laptop to Defendant Cakir, per his instructions.

21. Defendant Cakir repeatedly directed TechFusion not to release the Laptop Data to Children's Hospital, or to anyone else.

22. Plaintiff Children's Hospital instructed Defendant Cakir to provide the Hospital with the Laptop Data. Defendant Cakir refused to do so.

23. Defendant Cakir provided Children's Hospital with a removable data storage device known as a "key drive" (also known as a "thumb drive" or "USB flash drive") containing only certain limited files that he had selectively copied from his laptop.

24. In October 2014, Plaintiff Children's Hospital—after making efforts to obtain the Laptop Data directly from TechFusion, which declined absent authorization from Cakir—asked Defendant Cakir to authorize TechFusion to release the Laptop Data to Children's Hospital.  Defendant Cakir again refused to comply with this request.

25. On October 31, 2014, Plaintiff Children's Hospital's General Counsel sent Cakir a letter, instructing him that the Laptop and Laptop Data had to be returned to Children's Hospital by no later than 10:00 am on Monday, November 3, 2014.  The Hospital's General Counsel informed Cakir that if the Laptop and Laptop Data were not received by Plaintiff Children's Hospital by that date, "the Hospital will consider [you] to have misappropriated Hospital property, to have obstructed a scientific misconduct investigation and to be in violation of Hospital policy."

26. In November 2014, Defendant Cakir returned the Laptop to Plaintiff Children's Hospital.  However, the Laptop had been compromised and no longer contained most of the Laptop Data.  Moreover, Defendant Cakir refused, and continues to refuse, to produce the Laptop Data as imaged by, and in the possession of, TechFusion.  Instead, Defendant Cakir has repeatedly and incorrectly asserted that he has the right to ownership and control of the Laptop Data.

27. On information and belief, the Laptop Data would, if provided to Children's Hospital, confirm that Defendant Cakir attempted to take information rightfully belonging to the Hospital and sell it or use it with others to commercialize a drug or drugs competitive with the drugs that he was working on in BCH's laboratory.

## COUNT I

### Conversion

28. Plaintiff Children's Hospital incorporates by reference all preceding paragraphs as if set forth fully herein.

29. Plaintiff Children's Hospital is the sole owner of, and is entitled to immediate, exclusive, and unqualified possession of, the Laptop Data pursuant to the Participation Agreement and Acceptable Use Policy.

30. Plaintiff Children's Hospital has repeatedly instructed Defendant Cakir to deliver the Laptop Data to BCH, as its rightful owner. Despite this, Defendant Cakir instructed TechFusion to image the Laptop but not to provide the Laptop Data to Plaintiff Children's Hospital, or anyone else. Defendant Cakir thus has intentionally and wrongfully refused to provide the Laptop Data to the Hospital.

31. Plaintiff Children's Hospital has suffered, and continues to suffer, injury as a result of Defendant Cakir's wrongful conversion of the Laptop Data, as set forth above.

## COUNT II

### Replevin

32. Plaintiff Children's Hospital incorporates by reference all preceding paragraphs as if set forth fully herein.

33. Plaintiff Children's Hospital is the sole owner of the Laptop Data, property which far exceeds twenty dollars in value, and, in fact, exceeds seventy-five thousand dollars in value. The Laptop Data has been unlawfully detained by Defendant Cakir, and Plaintiff Children's Hospital is entitled to immediate, exclusive, and unqualified possession of the Laptop Data.


34. Plaintiff Children's Hospital is entitled to an Order pursuant to Mass. Gen. Laws ch. 247, § 7 that compels the delivery of the Laptop Data to the Hospital.

## **PRAYER FOR RELIEF**

WHERETOFORE, Plaintiff Children's Hospital respectfully requests that this Court:

a) Issue an Order forthwith, instructing Defendant Cakir to immediately provide, or direct TechFusion to immediately provide, the Laptop Data to Plaintiff Children's Hospital; and

b) Grant Plaintiff Children's Hospital such other, further and different relief as may be just and appropriate.

Respectfully submitted,

THE CHILDREN'S HOSPITAL CORPORATION
D/B/A BOSTON CHILDREN'S HOSPITAL

*By its attorneys,*

Dated: September 3, 2015

/s/ Harvey J. Wolkoff
Harvey J. Wolkoff (BBO # 532880)
Elizabeth E. Monnin-Browder (BBO # 679005)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
Harvey.Wolkoff@ropesgray.com
Elizabeth.Monnin-Browder@ropesgray.com

*Attorneys for The Children's Hospital Corporation
d/b/a Boston Children's Hospital*