UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE CHILDREN'S HOSPITAL CORPORATION D/B/A BOSTON CHILDREN'S HOSPITAL, <br><br> Plaintiff, <br><br> v. <br><br> ISIN CAKIR, <br><br> Defendant. | Civil Action No.: 15-cv-13281 |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                          **April 25, 2016**

## I.     Introduction

Plaintiff Children's Hospital Corporation ("Children's Hospital") has filed this action against defendant Isin Cakir ("Cakir") alleging that Cakir is in wrongful possession of the images and data on the laptop computer Cakir used during the course of his employment with Children's Hospital.  D. 1.  Children's Hospital asserts claims for replevin and conversion.  Id.  In his answer, Cakir raises a counterclaim for abuse of process.  D. 9.  Children's Hospital has moved for judgment on the pleadings on both of its claims.  D. 12.  Children's Hospital also moves to dismiss Cakir's abuse of process counterclaim.  Id.  For the reasons stated below, the Court DENIES the motion for judgment on the pleadings on Children's Hospital's claims and ALLOWS the motion to dismiss Cakir's counterclaim.

**II.     Standard of Review**

    **A.  Motion to Dismiss**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court conducts a two-step process, García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013), to determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). Reading the complaint as a whole, the Court identifies and disregards the conclusory legal allegations. García-Catalán, 734 F.3d at 103. The Court accepts factual allegations as true. Id. The Court then determines whether the factual allegations, taken together, present a reasonable inference of liability for the defendant's allegedly wrongful conduct. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" García-Catalán, 734 F.3d at 102 (internal citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).

    **B.  Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. Aponte-Torres v. Univ. Of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006). A motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage." Pérez-Acevedo v. Rivero-

Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (internal citation and quotation marks omitted). As a result, the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in its favor. Id. (internal citation and quotation mark omitted). On a Rule 12(c) motion, however, the Court considers the pleadings as a whole, including the answer. See Aponte-Torres, 445 F.3d at 54–55. Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true. See Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). The Court is also permitted to consider documents fairly incorporated into the pleadings and facts susceptible to judicial notice as it may do with a Rule 12(b)(6) motion. See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). The Court may not, however, resolve contested facts. See id. (internal citation omitted). Only if those properly considered facts "conclusively establish the movant's point" is the motion for judgment on the pleadings granted. Id. (internal citation omitted). Where material facts are disputed, the Court must deny the motion. Id.

### C. Procedural History

This civil action is related to Cabi et al. v. Boston Children's Hospital ("Cabi"), an ongoing suit in which Cakir, along with two other plaintiffs, asserts employment discrimination, wrongful termination and retaliation claims against Children's Hospital. Cabi et al. v. Boston Children's Hosp., No. 15-cv-12306-DJC, 2016 WL 593495, at *1 (D. Mass. Feb. 12, 2016). The plaintiffs in Cabi filed their complaint on June 11, 2015. Id. at *3. Less than three months later, on September 3, 2015, Children's Hospital instituted this action against Cakir. D. 1. Cakir raised a counterclaim for abuse of process in his answer. D. 9. Children's Hospital moves for judgment on the pleadings on its conversion and replevin claims. D. 12. Children's Hospital

moves to dismiss Cakir's counterclaim for abuse of process. Id. The Court heard the parties on the pending motion and took the matter under advisement. D. 20.

### D. Factual Summary

From October 2010 to February or April 2015, Cakir was employed as a post-doctoral fellow at Children's Hospital. D. 1 ¶ 8; D. 9 at 5. Throughout his employment, Cakir used a laptop to conduct his work ("the Laptop"). D. 1 ¶ 1; D. 9 at 1. As an employee, Cakir was subject to three Children's Hospital policies related to network resources, data storage and data ownership rights. D. 1 ¶¶ 15-17; D. 9 at 2-3; D. 13 at 7-8. At some point after his employment ended, Cakir delivered the Laptop to TechFusion, a third-party computer forensics company. D. 1 ¶¶ 3, 13, 20; D. 9 at 2. TechFusion created a forensic image of the Laptop, capturing all of the data contained on the Laptop. D. 1 ¶¶ 3, 13, 20; D. 9 at 2. Children's Hospital alleges that its employment policies grant Children's Hospital ownership of all of the images on the Laptop including all files, deleted files, hard drives, data and metadata as well as an exact forensic copy of the Laptop ("Laptop Data"). D. 1 ¶ 1. According to Children's Hospital, Cakir instructed TechFusion not to release the Laptop Data to Children's Hospital, D. 1 ¶¶ 3, 24, and continues to refuse to produce the Laptop Data, as imaged by and in the possession of TechFusion. D. 1 ¶ 26.

### E. Analysis

#### A. Children's Hospital is Not Entitled to Judgment on its Conversion Claim (Count I)

Conversion involves "the exercise of dominion or control over the personal property of another." Third Nat. Bank of Hampden Cty. v. Cont'l Ins. Co., 388 Mass. 240, 244 (1983). A plaintiff must show that (1) the defendant intentionally and wrongfully exercised control over property owned or possessed by the defendant, (2) the plaintiff was damaged and (3) if the defendant legitimately gained possession under a good-faith claim of right, the plaintiff's

demand for the return of the property was refused.  See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993) (citing Magaw v. Beals, 272 Mass. 334 (1930)).  Children's Hospital contends that, pursuant to internal policies, Children's Hospital is the sole owner of the Laptop Data, D. 1 ¶ 29, Children's Hospital is entitled to immediate, exclusive and unqualified possession of the Laptop Data, id., and Cakir has wrongfully converted the Laptop Data by refusing to deliver it to Children's Hospital.  D. 1 ¶¶ 28-31; D. 13 at 6-9.

Children's Hospital relies upon three policies to establish its ownership of the Laptop Data:  Acceptable Use of Computer and Network Resources ("Acceptable Use Policy"), D. 13-2, Participation Agreement for Persons Using the Funds or Facilities of Children's Hospital Boston ("Participation Agreement"), D. 13-1, and Children's Hospital Policy on Inventions and Intellectual Property ("Intellectual Property Policy").  D. 9-1.  The parties agree that the Acceptable Use Policy, Participation Agreement and Intellectual Property Policy apply to Cakir.  D. 1 ¶ 1; D. 9 at 1-3; D. 13 at 7; D. 14 at 3 & n.1.  Cakir concedes that Children's Hospital's "policies govern what [Children's Hospital] owns" and that "items falling within definitions provided by those policies are owned by [Children's Hospital]."  D. 14 at 5.  The parties, however, contest the limits of Children's Hospital's ownership under these policies.  According to Children's Hospital, pursuant to the Participation Agreement and Acceptable Use Policy, Children's Hospital "owns all the data on the Laptop, as well as the exact forensic copy of the Laptop made at . . . Cakir's instruction."  D. 13 at 2.  Conversely, Cakir contends that the Laptop Data contains, in part, personal and privileged communications that are not covered by the policies and Children's Hospital is not entitled to such data.  D. 14 at 3-4.  The Court reviews the relevant provisions of the policies.  The Acceptable Use Policy provides:

> CHB provides Computer and Network Resources, including email and use of the Internet, for legitimate business use in the course of your assigned duties.  Use of these resources and access to the information on them is a privilege granted to you at the sole discretion of CHB. . . . Information stored on or transmitted over CHB's Computer and Network Resources (including email) is the sole and exclusive property of CHB, and remains so even when stored on non-CHB equipment and media (such as your personal laptop and/or mobile device). . . . When a User ends employment or association with CHB, all CHB provided equipment must be returned.  This includes laptops, PDAs . . . and any other equipment assigned to the User by CHB.

D. 13-2 at 2, 4.  The plain language of the Acceptable Use Policy provides that all electronic information Cakir stored on or transmitted over Children's Hospital's computer and network resources is the sole and exclusive property of Children's Hospital.  Notably, ownership pursuant to the Acceptable Use Policy does not turn upon the subject matter of the data.  Instead, the language is sufficiently broad to encompass any data that is transmitted over or stored on Children's Hospital's computer or network resources.

In relevant part, the Participation Agreement provides:

> I understand that during the pursuit of activities within the scope of my employment by Children's Hospital Boston ("Hospital"), or during the performance of sponsored research made available to me by the Hospital . . . I may (individually or jointly with others) conceive or first reduce to practice inventions or discoveries, or copyrightable materials, or develop tangible or intangible research results and intellectual property (including, but not limited to, research notebooks, data, data bases, photographs, original drawings and diagrams, computer programs, and chemical and biological materials . . . ).  In consideration of my employment, or my opportunity to perform sponsored research, or my use of Hospital funds, resources, or facilities, I agree:  (1) that all such research results, intellectual property, inventions, discoveries and copyrightable materials will be owned by the Hospital . . . [and] to refrain from removing research materials, copyrightable materials, and other intellectual property from the Hospital premises."

D. 13-1 at 2.  Pursuant to its plain language, the Participation Agreement grants Children's Hospital ownership over the research results and intellectual property Cakir developed within the

scope of his employment with Children's Hospital. The Participation Agreement is supplemented by the Intellectual Property Policy. In relevant part, the Intellectual Property Policy provides:

> The Hospital owns all research results and intellectual property, whether tangible or intangible, developed by any person on the premises of the Hospital, or through substantial use of the Hospital's resources or facilities, or that relates to the research conducted by such person for the Hospital, or by a person within the scope of his or her employment by the Hospital . . . For purposes of clarity, such intellectual property includes, but is not limited to, research notebooks, data, databases, photographs, original drawings and diagrams, computer programs, as well as chemical and biological materials . . . Such intellectual property shall be removed from the Hospital's premises or transferred to other parties only for non-commercial research purposes . . . . Every invention based on the Hospital's intellectual property, as defined above, shall be the property of the Hospital.

D. 9-1 at 2-3. The Intellectual Property Policy is broader than the Participation Agreement: where the Participation Agreement limits ownership to research conducted within the scope of employment, the Intellectual Property Policy establishes that Children's Hospital's ownership extends to (1) research Cakir produced through the substantial use of Children's Hospital resources, (2) content that relates to research Cakir conducted for Children's Hospital and (3) research Cakir developed on Children's Hospital's premises. Taking all of the policies together, then, Children's Hospital owns (1) any data within the Laptop Data that was transmitted over or stored on Children's Hospital computers and networks; (2) any data containing research that fell within the scope of Cakir's employment with Children's Hospital; (3) any data that relates to research conducted for Children's Hospital; (4) any data containing research that was produced through substantial use of Children's Hospital resources; and (5) any data containing research that was conducted on Children's Hospital's premises. D. 9-1; D. 13-1; D. 13-2.

Cakir asserts that the Laptop Data contains, *inter alia*, personal data and privileged communications that fall outside of the applicable policies. D. 9 at 1-2. In response, without

denying that the Laptop Data contains Cakir's personal data, Children's Hospital points to the Acceptable Use Policy for coverage.  D. 13 at 8.  Children's Hospital stresses that rights of privacy do not extend to Children's Hospital's network resources and the "Acceptable Use Policy does not carve out an exception to the Hospital's ownership of the Laptop Data" for "personal information."  Id.  The Acceptable Use Policy, however, applies only to data that was transmitted over Children's Hospital's network and resources.  D. 13-2 at 2.  Thus, the Acceptable Use Policy does not grant Children's Hospital ownership of Cakir's personal communications to the extent those communications never interacted with Children's Hospital's network and resources.  Children's Hospital has presented no basis for its ownership over any of Cakir's data that was (1) never transmitted or stored over Children's Hospital's network and (2) was not created with the use of Children's Hospital resources, within the scope of Cakir's employment with Children's Hospital, on Children's Hospital's premises or in relation to research conducted for Children's Hospital.[1]

The remaining factual dispute concerns whether the Laptop Data contains personal and privileged data that falls outside of the policies is fatal to Children's Hospital's motion.  Cakir "cannot convert what [Children's Hospital] does not own." Jayson Assocs., Inc. v. United Parcel Serv. Co., No. 04-cv-10771-RWZ, 2004 WL 1576725, at *2 (D. Mass. July 15, 2004) (citing Nadal-Ginard v. Children's Hosp. Corp., No. 94-cv-3782-TSB, 1995 WL 1146118, at *8 (Mass. Super. Dec. 1, 1999)) (dismissing conversion claim where ownership was not alleged).  That is, "only a defendant that wrongfully exercises acts of ownership has committed conversion."  See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir.

---

[1] Moreover, Children's Hospital's argument that its ownership extends to metadata and information showing chain of custody, D. 13 at 8, even if true, would only mean that Children's Hospital owns metadata that otherwise falls within the Acceptable Use Policy, Participation Agreement and Intellectual Property Policy.

2005) (internal citation and quotation marks omitted). Because Children's Hospital's conversion claim pertains to "all the data on the Laptop, as well as the exact forensic copy of the Laptop," D. 13 at 2, Children's Hospital has failed to establish its ownership over all of the property that is the subject of its conversion claim. In light of this factual dispute, Children's Hospital is not entitled to judgment on the pleadings. See, e.g., Elsevier Ltd. v. Chitika, Inc., 826 F. Supp. 2d 398, 403 (D. Mass. 2011) (denying motion for judgment on the pleadings even though the moving party "[might have] eventually [been] entitled to judgment" because factual questions remained at that juncture); Sarvis v. Polyvore, Inc., No. 12-cv-12233-MBB, 2015 WL 5934759, at *3, *9 (D. Mass. Aug. 24, 2015), report and recommendation adopted, No. 12-cv-12233-LTS, 2015 WL 6182226 (D. Mass. Sept. 14, 2015) (denying motion for judgment on the pleadings where defendant's answer gave rise to factual disputes). Accordingly, the motion is denied.

### B. Children's Hospital is Not Entitled to Judgment on its Replevin Claim (Count II)

To prevail on a replevin claim, a plaintiff must show that (1) the goods in question were unlawfully taken from their owner's possession or have been unlawfully detained (2) the owner has a right to possession and (3) the value of the goods exceeds $20. See Wilson v. Estate of Arcese, No. 07-cv-01461-MAH, 2007 WL 2429607, at *3 (Mass. Super. Aug. 9, 2007). "[N]ot only must the plaintiff have the right to possession generally, but he must have the right to immediate, exclusive and unqualified possession of the property as against each defendant." Id. (alteration in original) (internal quotation marks and citation omitted). For all of the reasons discussed above, Children's Hospital has failed to establish ownership of the Laptop Data in its entirety – an essential element of the replevin claim. See, e.g., Davis v. Smith-Springfield Body Corp., 250 Mass. 278, 284 (1924) (explaining that "[a] plaintiff in replevin must maintain his case on the strength of his own title or claim"); Wilson, 2007 WL 2429607, at *3 (dismissing

9

replevin claim where "[m]issing from these facts [was] any specificity [as] to ownership of property . . . [and] any allegation that the defendants are unlawfully detaining the property"). Accordingly, Children's Hospital is not entitled to judgment on the pleadings on its replevin claim.

Although Children's Hospital is not entitled to judgment on its replevin and conversion claims, it remains undisputed that Children's Hospital owns those portions of the Laptop Data that fall under the Acceptable Use Policy, Participation Agreement and Intellectual Property Policy.[2] Accordingly, the parties shall abide by the terms of the order entered by the Superior Court, D. 24, and the authorization entered by Cakir, D. 25.

### C. Cakir Has Not Adequately Stated a Claim for Abuse of Process

Finally, Children's Hospital moves to dismiss Cakir's abuse of process counterclaim. To state a claim for abuse of process, Cakir must allege that (1) process was used (2) the use was motivated by an ulterior purpose and (3) the plaintiff suffered damage. See MHA Fin. Corp. v. Varenko Invs. Ltd., 583 F. Supp. 2d 173, 178 (D. Mass. 2008) (citing Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975)). Process means "causing papers to issue by a court to bring a party or property within its jurisdiction." Silvia v. Building Inspector of W. Bridgewater, 35 Mass. App. Ct. 451, 453 n.4 (1993) (quoting Jones, 369 Mass. at 390) (internal quotation marks omitted). Abuse of process involves the "malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 142 (D.

---

[2] This Court is aware of the order entered in the related state court proceeding, D. 24, and Cakir's letter regarding his authorization to release of forensic copy of the Laptop to Children's Hospital. D. 25. Having reviewed the order and Cakir's authorization and having received no notice from the parties that either moots the instant motion (which neither action, on its face, appears to do), the Court has proceeded to consider the motion on its merits.

Mass. 2007) (granting summary judgment for defendant where there was "no evidence of any kind" to indicate that officers acted with ulterior or illegitimate purpose) (quoting Carroll v. Gillespie, 14 Mass. App. Ct. 12, 26 (1982)) (internal quotation mark omitted).

Ulterior purpose exists where a party "institut[es] a civil action to achieve a collateral purpose other than winning the lawsuit." Am. Mgmt. Servs., Inc. v. George S. May Intern. Co., 933 F. Supp. 64, 69 (D. Mass. 1996) (citing Silvia, 35 Mass. App. Ct. at 453–54). The ulterior motive, however, must be "more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit." Broadway Mgmt. Servs. Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987). Courts have, for example, found an ulterior purpose where a party uses process to improperly influence the outcome in a separate, ongoing lawsuit. See, e.g., Am. Velodur Metal, Inc. v. Schinabeck, 20 Mass. App. Ct. 460, 470 (1985) (concluding that initiating a separate litigation for the sake of coercing wife to accept terms unfavorable to her in divorce settlement constituted an ulterior purpose).

Children's Hospital initiated this lawsuit against Cakir, D. 1, thereby satisfying process. Cakir alleges that Children's Hospital instituted this lawsuit in an effort to influence the ongoing Cabi litigation. D. 9 at 7. Cakir alleges that Children's Hospital could have raised its concerns regarding the Laptop Data by filing a counterclaim in Cabi and, instead, Children's Hospital needlessly instituted not only this lawsuit but also a state court action against another plaintiff from Cabi. Id. According to Cakir, Children's Hospital raises the same conversion and replevin claims in both new lawsuits. Id. In addition, Cakir alleges that Children's Hospital already has access to the data it seeks including, but not only, through the laptops of the other plaintiffs from Cabi, as Children's Hospital has possession of those laptops. Id. Cakir alleges that he has

offered Children's Hospital access to certain categories of data. Id. at 3; D. 25. Moreover, it is undisputed that Children's Hospital is in possession of the Laptop, D. 1 ¶ 4; D. 9 at 2, although it is disputed that the Laptop still contains all of the Laptop Data. Even accepting Cakir's allegations as true, it cannot be said, even at this juncture, that they amount to an abuse of process which necessarily requires "use of process as a threat or a club to coerce or extort some collateral advantage not properly involved in the proceeding." Broadway Mgmt. Servs. Ltd., 652 F. Supp. at 1503. First, as discussed above, even as the Court declines to grant judgment on the pleadings to Children's Hospital on its claims, those claims are not without merit. Second, to the extent that Cakir contends that the filing of this separate lawsuit amounts to abuse of process as Children's Hospital could have asserted such claims in Cabi, that Cakir may be "burdened with the ordinary costs of defending such a lawsuit," id., or the fact that Children's Hospital chose to assert its claims in a separate lawsuit is insufficient to state an abuse of process claim. Third, that the claims Children's Hospital's brought in this case are related to claims that Cakir and others have brought against the hospital in another case does not make the filing of this lawsuit an abuse of process. Even taken together and accepted as true at least at this juncture, Cakir has not adequately alleged that, in bringing this lawsuit, Children's Hospital "aim[ed] to further a purpose other than winning the lawsuit." Cf. Scholz v. Goudreau, No. 13-cv-10951-DJC, 2013 WL 6909433, at *7 (D. Mass. Dec. 26, 2013) (denying motion to dismiss abuse of process claim where nonmoving party allegedly instituted three baseless lawsuits to drive a competitor out of business). Moreover, Cakir alleges in conclusory fashion that he suffered "damage" as a result of Children's Hospital's alleged abuse of process, D. 9 at 8, but the nature of that damage, separate and apart from defending a non-frivolous claim, has not been alleged. For all of these reasons, Cakir has not adequately stated a claim for abuse of process.

### F. Conclusion

For these reasons, the Court DENIES Children's Hospital's motion for judgment on the pleadings on its conversion and replevin claims. D. 12. The Court ALLOWS Children's Hospital's motion to dismiss Cakir's counterclaim. D. 12.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
